## Standard Motors Securities Corporation, Appellee, v. Yates Company, Appellant.

### Gen. No. 8,416.

Opinion filed April 22, 1930.

A. E. and R. C. DeMange, for appellant.

Stone & Taylor, for appellee; Branson Wright, of counsel.

Mr. Justice Shurtleff delivered the opinion of the court.

This is an action in replevin, by which appellee, Standard Motors Securities Corporation, as plaintiff, gained possession of an automobile from William W. Yates, Robert C. Yates and Richard W. Yates, operating a garage as Yates Company, a partnership.

Carl Anderson, on October 22, 1928, purchased and took possession of an automobile by virtue of a conditional sales contract. The contract was assigned to appellee, Standard Motors Securities Corporation. The automobile was subsequently damaged while in the possession of Anderson and Anderson took it to appellant's garage for repairs. Appellant repaired and stored the automobile at the request of Anderson and charged the sum of $136.05 for the services. That the services were performed; that they were necessary; and that the charge is reasonable, is not questioned.

After the automobile was repaired and the charges for storage incurred, appellee claimed the right to repossess the automobile under the conditional sales contract and replevied it from appellant's possession leaving appellant's charges unpaid.

To the usual declaration in replevin charging unlawful taking and detention, appellant pleaded six pleas, of which the fourth and sixth aver facts claiming a lien upon the automobile to secure payment for the repairs, materials and storage furnished by appel-

lant. The court sustained a demurrer to appellee's first replications to the fourth and sixth pleas and, on June 3, 1929, appellee filed an additional replication to the fourth plea and two additional replications to the sixth plea. The replication to the fourth plea is in form a pleading in confession and avoidance. All three replications admit the fact, or aver facts, establishing that Anderson was in lawful possession of the automobile under the conditional sales contract when he delivered the automobile to appellant and requested the repairs, but seek to interpose the conditional sales contract as giving appellee the right to possess the automobile as against the lien created by section 1 of the Garage Keepers' Lien Act (Cahill's Ill. Rev. Stat. 1929, ch. 82, ¶ 45), and without paying appellant's charges. The replications thus raise the issue that appellee's right to possession under its sales contract is paramount to appellant's right to possession under the lien.

Appellant demurred generally and especially to the replications. All pleadings except the declaration, appellant's fourth and sixth pleas and appellee's replications of June 3rd to the fourth and sixth pleas were withdrawn. Appellant's demurrers were overruled; appellant stood by the demurrers and moved in arrest of judgment. The motion in arrest of judgment was overruled and the court entered judgment against "Yates Company, a partnership, composed of William W. Yates, Robert C. Yates and Richard W. Yates," etc., for one dollar damages for unlawfully detaining the automobile and that appellant, Standard Motors Securities Corporation, retain possession of the automobile replevied. Appellant has brought the record, by appeal, to this court for review.

The statute in question, under which appellant seeks to establish a lien against the machine, is as follows:

"An act for the better protection of any person, firm or corporation expending labor, skill or materials

upon, or furnishing storage for, any chattel, creating a lien upon such chattel, and providing for the enforcement of such lien.

"Paragraph 45, Lien for labor, materials, storage—Duration.] Section 1. Be it enacted by the People of the State of Illinois, represented in the General Assembly: Every person, firm or corporation who has expended labor, skill or materials upon any chattel, or has furnished storage for said chattel, at the request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof, shall have a lien upon such chattel beginning on the date of the commencement of such expenditure of labor, skill and materials or of such storage for the contract price for all such expenditure of labor, skill or materials, or for all such storage, or in the absence of such contract price, for the reasonable worth of such expenditure of labor, skill and materials, or of such storage, for a period of one year from and after the completion of such expenditure of labor, skill or materials, or of such storage, notwithstanding the fact that the possession of such chattel has been surrendered to the owner, or lawful possessor thereof." (Cahill's Ill. Rev. Stat. 1929, Liens, chapter 82, ¶ 45, p. 1666.) The same statute is found in Smith-Hurd's Rev. Statutes, chapter 82, section 40.

The ruling of the court below is that appellant has no lien which it can enforce against the holder of the legal title to the car. This question has not, heretofore, been passed upon by the Supreme Court of this State, as the statute may affect conditional sales contracts. The court has passed upon the question as it relates to chattel mortgages. Appellant contends that, until the adoption of the Uniform Sales Act, by this State, Cahill's St. ch. 121a, ¶ 4 *et seq.*, the creation of an apparent ownership and the concealment of the true owner by an unrecorded conditional sales contract has by the courts of this State been consistently held

to be a constructive fraud upon persons ignorant of the conditional sales contract and in good faith dealing with the conditional sales vendee as owner. *(Sherer-Gillett Co. v. Long,* 318 Ill. 432.) Possession of a chattel was long held to create a presumption of ownership. *(Gilbert v. National Cash Register Co.,* 176 Ill. 288, 297; McNeil Ill. Evidence, vol. 2, p. 1816.) The adoption by the State of the Uniform Sales Act authorizing conditional sales necessarily reversed the position of the courts upon the question; and the basic statutes, upon which other liens are recognized in this State, are shown to be founded upon the possession of the holder, assuming such possession in all cases to be a lawful possession. The laws of other states are cited by appellant: *Davenport v. Grundy Motor Sales Co.,* 28 Cal. App. 409, 152 Pac. 932; *Goodman v. Anglo-California Trust Co.,* 62 Cal. App. 702, 217 Pac. 1078; *Smith v. Stevens,* 36 Minn. 303, 31 N. W. 55; *Laird v. Moonan,* 32 Minn. 358, 359, 20 N. W. 354; *Monthly Instalment Loan Co. v. Skellet Co.,* 124 Minn. 144, 144 N. W. 750; *Terminal Corp. v. O'Rourke,* 193 N. Y. S. 238; *Smith v. Pierce-Arrow Sales Corp.,* 230 N. Y. S. 194; *Crosier v. Cudihee,* 85 Wash. 237, 147 Pac. 1146, and *Cache Auto Co. v. Central Garage,* 63 Utah 10, 221 Pac. 862, 30 A. L. R. 1217, which involves a conflict between a garage keeper's lien and the rights of a conditional sales vendor. The validity of statutes giving garage keepers paramount liens is assumed. Many cases are reviewed and the opinion clearly distinguishes between the Utah statute providing for a lien when the work is done at the request of "owner" and the statutes of other States providing for liens where work is done at the request of the "lawful possessor." But it is not clear whether the decisions of these courts just cited are based upon provisions of the Uniform Sales Act or upon other statutes. We conclude the latter.

In this State the court had before it a construction of the provisions of the Uniform Sales Act in the case

of *Sherer-Gillett Co. v. Long,* 318 Ill. 432, in which the court held:

"Before sales became a subject of uniform legislation it was settled by an overwhelming weight of authority that the seller is not estopped by his conduct in delivering the possession of goods to the buyer upon a contract of conditional sale from asserting his title against one who purchases from the buyer, relying upon the apparent title of the latter (1 Williston on Sales,—2d ed.—sec. 324; *Harkness v. Russell & Co.,* 118 U. S. 663, 7 Sup. Ct. 51; *Arnold v. Chandler Motors,* 45 R. I. 469, 123 Atl. 85;) but in this State we had held that a delivery of personal property to the purchaser upon a contract of conditional sale, with a retention of title in the seller, amounts to constructive fraud, which postpones the right of the real owner in favor of those who have dealt without notice with the conditional vendee, who has been given the indicia of ownership. *(Gilbert v. National Cash Register Co.,* 176 Ill. 288; *Brundage v. Camp,* 21· Ill. 330.) Uniformity in the law of the several States pertaining to sales being deemed essential to the commercial welfare of the country, leaders of the American bar prepared and submitted to the legislatures of the several States a uniform sales act and a uniform conditional sales act. The former was adopted in this State in 1915 and is the law today. By section 20 of the act the validity of a contract of conditional sale is recognized. Section 23 declares the law of this State respecting the transfer of title to be that theretofore declared by the great majority of the courts of this country. It provides: 'Subject to the provisions of this act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.' . . . The Uni-

form Sales act recognizes the validity of such contracts and specifically provides that no title can be passed by the purchaser of goods under such a contract 'unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.' There is no basis for the operation of an estoppel in this record.''

As to conditional sales contracts, in *Sherer-Gillett Co. v. Long, supra,* and in other cases, it has been held in this State that the seller retains the title and ownership of the goods, a vested property right of which he can be in no manner deprived except by his own misconduct, resulting in estoppel.

The same statute as to a lien was before the court in *Ehrlich v. Chapple,* 311 Ill. 467, 469; where the question involved a lien for the repair of a machine, upon which there was a chattel mortgage, and the court said: ''A chattel mortgage executed, acknowledged and filed for record as the statute requires is notice to all the world. Bogasch, the garage keeper, was bound to know of the lien of the chattel mortgage. . . . The main question on this branch of the case is, Could Bogasch enforce the lien for charges which accrued after the chattel mortgage was filed for record, as a prior lien to that of the chattel mortgage? In our opinion he could not, and in so far as the statute purported to give him that right it was in violation of section 2 of our bill of rights. The lien of the chattel mortgage was a vested property right, which neither he nor his assignee for value could be deprived of by legislative act.—*City of Chicago v. Wells,* 236 Ill. 129; *Barque Great West v. Oberndorf,* 57 Ill. 168; *Millett v. People,* 117 Ill. 294; *Ramsey v. People,* 142 Ill. 380.''

If the act creating the lien could not be construed to extend to a machine covered by a chattel mortgage, the possession of which by contract is in the mortgagor until default, neither can it by construction be car-

ried to a machine subject to a conditional sales contract, in which the legal title and the vested right of ownership is in the seller, and of which vested right he cannot be deprived except by due process of law.

Some argument is made that the rule is against the best public policy of the State. This question is not before us, and if it were it need only to be suggested that no mechanic is called upon to work upon machines owned by others or without his pay, if he will use suitable diligence in that behalf.

Finding no error in the record, the judgment of the circuit court of McLean county is affirmed.

*Affirmed.*