### HAMILTON v. THURBER et al.
### Civil Action No. 103.

District Court, D. Minnesota,
First Division.

Aug. 9, 1944.

Galvin & Beatty, of Winona, Minn., for plaintiff.

Sawyer & Sawyer, of Winona, Minn., for defendant.

BELL, District Judge.

This is an action by the plaintiff, Clayton V. Hamilton, against defendants Northwest Underwriters, hereafter called Underwriters, The General Insurance Company of America, hereafter called General, and H. P. Thurber on a contract to recover commissions on insurance premiums. It is based on a contract executed December 1, 1937, by Underwriters and the plaintiff. The plaintiff, a citizen of California, claimed a sum in excess of $3,000 from Underwriters and Thurber, citizens of Minnesota and General, a citizen of Washington.

The plaintiff from 1919 to 1942 conducted a general insurance agency business with offices at St. Paul, Minnesota. The defendant Thurber at the times here material and for many years prior thereto was engaged in the insurance business at Chatfield, Minnesota. He was and now is the owner and directing official of Underwriters which acted as general agent of the defendant General, the latter being authorized to transact business in the state of Minnesota.

Underwriters for many years authorized the plaintiff to write policies for it and through it for General. The plaintiff about June, 1935, placed a policy with the Farmers Union Central Exchange, hereafter called Exchange, covering one hundred or more properties of cooperative organizations belonging to the Exchange. This policy was placed in General and was renewed from year to year and increased in amount till on June 15, 1940, when the premium was approximately $8,500 for the year. The plaintiff wrote and established a substantial line of insurance in his representation of the defendants.

The plaintiff's agency agreement with Underwriters provided:

"In the event of termination of this Agreement, the Agent having promptly accounted for and paid over premiums for which he may be liable, the Agent's records, use and control of expirations shall remain the property of the Agent and be left in his undisputed possession; otherwise the records, use and control of expirations shall be vested in the Company."

The plaintiff contends that the defendants unlawfully interfered with his "expirations" or right to renewal commissions

under this provision of the contract; that Exchange in January, 1940, organized the Farmers Union Agency, hereafter called Agency, to transact an insurance agency business and with a particular view to the elimination of the plaintiff from the insurance on properties of Exchange; that this agency was paid the commissions that were due the plaintiff and that the defendants in collaboration with Exchange and Agency deprived the plaintiff of commissions on certain renewal premiums that were due him.

The defendants contend that a disagreement arose between the plaintiff and Exchange as a result of which the latter thereafter refused to place insurance with the plaintiff directly or indirectly and so notified the defendants; that the insurance on the properties of Exchange then was placed with the defendants direct through the newly organized agency of the Exchange; that Exchange as the insured had the right to select the insurance companies in which it desired to place its insurance and the insurance agent and general agent with whom it desired to transact business.

The defendants admit that the policies that expired on June 15, 1940, and thereafter were renewed direct, that the plaintiff was not paid the commissions and that the commissions were paid to Agency.

The case was tried and a verdict returned in favor of the plaintiff and against the defendant Underwriters. The other two defendants had a verdict in their favor. The defendants moved for a directed verdict at the close of the plaintiff's testimony and at the close of all the testimony. The motions were denied. The defendant Underwriters has presented a motion for a judgment notwithstanding the verdict; or, in the alternative, for a new trial. Two grounds are urged in support of the motion; (1) The verdict is inconsistent (a) in amount and (b) two defendants exonerated; and (2) erroneous instructions.

 (1) (a) The verdict was for the plaintiff for $1,800 and against Underwriters. Under the evidence it might have been for approximately $2,150; likewise it might have been against all three defendants. However, there was evidence on which the jury could have based its finding for the amount of its verdict. It could have rejected some of the items to which the plaintiff was making claim. Thurber, the directing official of Underwriters, testified that in December, 1940, he gave Howard Brissman a check in the sum of $1,555.57 for Agency, that he was not under obligation to do so and that the check in fact was a "present". He further testified that it was for "servicing" the policies. Undoubtedly it was a commission on the renewal of the large policy on June 15, 1940, and a number of smaller policies. It is reasonable to believe that the jury concluded that Thurber was not really making presents of such sums to agents, that it was a commission and that the plaintiff was fully entitled to it under his contract, especially as Agency had no license to write insurance on June 15, 1940, and did not have one till in September of that year. The sum of $1,555.57 with interest from the renewal of the policy to the time of the trial would have amounted to approximately $1,800. Furthermore Thurber testified that during the first year after the termination of the plaintiff's contract, the renewal commissions on policies formerly written by the plaintiff amounted to $1,842.48. There was testimony that renewal commissions in the sum of $237.31 were on policies in the Austin Mutual Insurance Company instead of General. The jury may have deducted this sum from plaintiff's claim. The jury was charged that the measure of damages was the loss of commission as fixed by the jury. There is ample evidence to sustain the finding of the jury. This is not a case where the amount claimed is definite or fixed and where the verdict must be for a sum certain or nothing. The jury in this case could allow some items and reject others. In any event the defendant cannot complain that the verdict was for an insufficient sum. Weinstein v. Laughlin et al., 8 Cir., 21 F.2d 740; Pennig v. Schmitz et al., 189 Minn. 262, 249 N.W. 39; Stone v. Kohler et al., 190 Minn. 368, 251 N.W. 665. This contention of the defendant cannot be sustained.

 (1) (b) Two of the defendants were exonerated. In this the jury may have reached an inconsistent conclusion but only the plaintiff can complain of its action in this regard. The question now is whether the defendant Underwriters is liable. The liability, if any, was several. The plaintiff could sue anyone or all of the defendants, and the exoneration of two does not aid the third. Bracke v. Lepinski et al., 187 Minn. 585, 246 N.W. 249. After all General was a Washington corporation caught in a controversy between a number

of Minnesota parties and may have been excused by the jury for that reason irrespective of its legal liability. It is not unlikely that the jury believed Underwriters and Thurber were substantially one and the same party. Underwriters was the concern that had signed the agency contract with the plaintiff agreeing to respect his right to expirations. The jury limited the recovery to the party obligated by contract and it could do that notwithstanding the instruction of the court as to the liability of General and Underwriters for the acts of Thurber.

■ (2) The contention of error in the charge requires a consideration of the instructions and some of the evidence. The charge must be considered as a whole and must be interpreted in the light of the evidence. It must be remembered that the contractual right to "expirations" is the basis of plaintiff's claim. The provision of the contract is explicit. On its termination the expirations became the property of the plaintiff. Kerr & Elliott v. Green Mountain Mutual Fire Insurance Co., 111 Vt. 502, 18 A.2d 164. After quoting the provision of the contract and defining the term "expirations," the jury was instructed:

"If you find from all the evidence in this case that the conduct of the defendants was an unlawful interference with any right of the plaintiff to expirations on policies originally written by him your verdict should be for the plaintiff. If the defendants, Northwest Underwriters or Thurber, agreed with representatives of the Farmers Union Agency to write renewals of policies formerly issued to the plaintiff Hamilton before such policies expired that was an unlawful interference with the plaintiff's rights to the use of the expirations given him by his agency contract * * *."

The jury was further instructed as follows:

"If you find from all the evidence in this case that there was not an unlawful interference by the defendants with the right of the plaintiff to certain expirations as the term has been defined your verdict should be for the defendants. If there was such interference by the defendant Thurber or his agents and employees his acts would be binding on the defendants, Northwest Underwriters and the General Insurance Company of America."

"On the one hand, if you find from the evidence that the defendants or any of them were acting together or in collaboration with officers or employees of the Farmers Union Central Exchange or the Farmers Union Agency to interfere with or deprive the plaintiff of expirations under his agency contract, their conduct was unlawful, and if the defendant did thus interfere with the rights of the plaintiff, then the plaintiff is entitled to recover."

"On the other hand, if the Farmers Union Central Exchange as a policyholder was merely exercising its right to select insurance agents with whom and insurance companies with which it desired, for reasons of its own, to place its insurance and refused to transact business with the plaintiff without intent to deprive the plaintiff of any property right in expirations and so notified the defendants, then the defendants are not liable to the plaintiff and your verdict should be for the defendants."

If the theory of the defense was not clearly submitted in the first of the three paragraphs last quoted, it certainly was in the last.

■ The objection to the charge is in the first quotation, that is, that as the defendants agreed with Agency before policies expired to renew them direct, to the exclusion of the plaintiff, it was an unlawful interference. The argument is made that this instruction left the way open for the jury to conclude that, if there was such agreement even at the hour of expiration of a policy, it would constitute an interference, and that such is not the law. Under the facts in this case the jury was not mislead or deceived by this instruction. The evidence is clear and conclusive that such agreement was made on March 22, 1940. The negotiations were conducted by Howard Brissman for Exchange with defendant Thurber. Brissman was then employed by Exchange and had charge of its insurance. He testified that Syftestad, the general manager of Exchange, instructed him to go to Chatfield to confer with Thurber in regard to doing business with the latter direct. Brissman told Thurber that the Exchange had organized an insurance agency and desired to write insurance and inquired whether they could secure representation of the Thurber companies. Thurber replied that if they were properly licensed he saw no reason why he should not do business with them direct. Thurber, Brissman and Syftestad were fully aware that the policies on Exchange properties

830

had been written by the plaintiff. In brief the agreement between Thurber and the Exchange to eliminate the plaintiff and do business direct with each other was made nearly three months before the expiration of June 15, 1940, and there is no dispute about it, and there is no evidence that such agreement was negotiated at any other time. Consequently, no harm resulted in telling the jury that if the defendant, before the expiration of the policies, agreed with representatives of Agency to renew policies formerly issued through the plaintiff, it was an unlawful interference with the plaintiff's right to expirations.

In considering the motion, the testimony, and all inferences that reasonably may be drawn therefrom, must be viewed most favorably to the plaintiff, as the jury found for plaintiff. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434. The evidence in this case was quite sufficient to justify the jury in concluding that Syftestad as general manager of Exchange early in 1940 took action to establish an insurance agency primarily to write insurance on properties of the Exchange; that on March 22, 1940, he sent Brissman to confer with Thurber and, if possible, to obtain authority from Thurber or Underwriters to represent his companies; that he deliberately inaugurated a breach with the plaintiff and notified defendants that he would no longer transact business with the plaintiff in order to secure representation of the Thurber companies. Furthermore, the jury might have found that the defendants were perfectly willing to ignore their contractual obligations to the plaintiff, eliminate the plaintiff and establish relations with Agency. The jury was explicitly instructed that if Exchange as a policyholder was merely exercising its right to select insurance agents with whom and insurance companies with which it desired, for reasons of its own, to place its insurance and refused to transact business with the plaintiff without intent to deprive the plaintiff of any property right in expirations and so notified the defendants, then the defendants were not liable. Obviously the jury refused to so find.

Syftestad as general manager of Exchange and Agency, Thurber as general manager of Underwriters were the dominating factors in the shift in insurance business involved in this case. Brissman likewise was an important factor because he had been an employee of the plaintiff and at the time of negotiations was an employee of the Exchange and in charge of its insurance affairs and because of his intimate knowledge of the entire situation. From 1929 to 1931, a period of two years, Brissman had been employed by the plaintiff in his insurance business and had charge of the plaintiff's records and policies. From 1931 to 1936 he was employed by the Farmers National Grain Corporation. In 1936 he was employed by Exchange, was placed in charge of its insurance department, and was so employed continuously until March, 1940, when Exchange organized the insurance agency and placed him in charge of it. The license from the state of Minnesota was issued to Brissman personally in September, 1940. So, the jury could have believed that Brissman, one-time employee of the plaintiff, was sent by Syftestad to Thurber to secure an agency from Underwriters and that all these parties knew of the plaintiff's right to the expirations but chose to ignore it.

The instructions required the jury to find that the defendants intentionally and unlawfully interfered with the right of the plaintiff to expirations before the plaintiff could recover. This instruction perhaps went further in favor of defendants than was proper. The jury has found that the defendant Underwriters intentionally and unlawfully violated the provision in the contract that was designed to protect the plaintiff and its finding should be respected. There was no prejudicial error in the trial and the motion should be overruled.